## No. 2732.

## ROBERT STOCKMAN *v.* THE STATE.

1. THEFT—PRACTICE—EVIDENCE.—The prosecuting witness having testified on his direct examination that he found his stolen sheep in the possession of one D., and that D. at first agreed to surrender the animals, but subsequently refused to do so, was asked on his cross examination if D., when he refused to surrender the sheep, did not assign as his reason for so doing that he had purchased them. This question and the answer thereto were excluded as hearsay. *Held:* That the ruling was error, the question and the answer being legitimate under the rule that when "part of a conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other."

2. SAME.—The questions and answer should also have been admitted under the rule that "when an act is done to which it is necessary or important to ascribe a character, motive or object, what was said by the actor at the time, from which the character, motive or cause may be collected, is part of the *res gestæ*—verbal acts—and may be given in evidence, whether the actor be or be not a party to the suit."

3. POSSESSION OF RECENTLY STOLEN PROPERTY—CHARGE OF THE COURT.— With respect to the presumption arising from the possession of recently stolen property, the trial court charged the jury as follows: "If a person is found in possession of property recently stolen, and if the circum-

stances are such as call upon him for an explanation, and he fails to give
any explanation of such possession, then these facts would authorize his
conviction, if a presumption of guilt has arisen in the minds of the jury
from such facts." *Held* erroneous, as being a charge upon the weight
of evidence. See the opinion *in extenso* for the correct rule upon the
subject.

APPEAL from the District Court of Uvalde. Tried below be-
fore the Hon. T. M. Paschal.

The conviction in this case was for the theft of two hundred
and seventy-five head of sheep, the property of C. S. Chilton, in
Uvalde county, Texas, on the eleventh day of September, 1886.
A term of two years in the penitentiary was the penalty assessed
against the appellant.

W. C. Bell was the first witness for the State. He testified
that he knew the defendant by sight, but had no personal
acquaintance with him. C. S. Chilton's ranch was in Uvalde
county, about ten or eleven miles north of the town of Uvalde.
On or about September 1, 1886, the witness, being then on his
way to Uvalde in a hack, saw the defendant and one June Dean
going north towards Chilton's ranch. They were in the road
which leads from Uvalde to Leakey, in Edwards county, and
were about three miles from Chilton's ranch. Witness then
knew Dean, but had never before seen the defendant. When he
met them the witness gave them some peaches, of which he had
a supply in his hack, and observed them closely. Chilton's ranch
was some little distance off the road that defendant and Dean
were traveling. Witness did not see defendant and Dean again
until after their arrest.

Butch Patterson was the next witness for the State. He testi-
fied that he knew the defendant only by sight, having seen him
two or three times. The witness and one Tulley passed John-
son's tank on the Uvalde and Leakey road, on or about Septem-
ber 1 or 2, 1886. On that occasion he saw June Dean and
another man at the tank, but was unable to say whether or not
the defendant was the other man. He did not know what busi-
ness June Dean and his companion had at the tank. They had
their horses, but nothing else with them. Witness did not take
especial notice of the horses, nor did he see any sheep about the
tank, nor on the road near the tank.

James Beeson testified, for the State, that he knew the defend-
ant and one June Dean. Witness saw the defendant and Dean

on Brushy creek in Uvalde county on September 3, 1886.   They were driving a flock of sheep towards the Mitchell ranch, at which the said Dean was then living.   Witness did not know where the defendant lived.   Between two hundred and three hundred sheep were in the drove driven by the defendant on the occasion referred to.   When witness saw Dean and defendant with the sheep they were in a rough, brushy, mountainous country, and were off the Uvalde and Leakey road.   They were not traveling a public road, and the only trails were the cow trails around the hollows.   They, however, were not following a cow trail.   When witness saw the parties, Dean was walking, and defendant was riding a horse and leading another horse.   They looked towards the witness and he was confident they saw him, for they at once turned the sheep.   The witness, at the time he saw the said parties and the sheep, was three miles from home, building a brush fence.   The parties were some five or six miles from the road, up Frio canyon.   They were flanked by other roads at the distance of about two miles.   On his cross examination, this witness stated that the parties and the sheep were about two hundred and eighty yards distant from him when he saw them.   He had seen the defendant only twice before that occasion.   Witness saw the parties for a short distance only, and did not know where they took the sheep to, nor did he know where they brought them from.   The witness saw no brand nor tar marks on the sheep.   It was not an uncommon thing to see people driving sheep through that country.

C. S. Chilton testified, for the State, that in September, 1886, he kept his sheep in Uvalde county, Texas, their range extending from the dry Frio road to the main Frio road, and along the road leading from the town of Uvalde to Leakey in Edwards county.   The witness was in the habit of counting his sheep at least once a week, and when he counted them about the first of September, 1886, he found that about three hundred of them were gone.   Witness hunted unsuccessfully for them for four or five days, and then, acting upon certain information, he went to the shearing camp of Mr. June Dean, where he found Mr. Dean, and asked him about the sheep, which he described by the tar brand.   Dean replied that he had sheep answering to the said description, but that they were not then at his corral.   Witness and Dean then went to a shearing pen about two miles from Dean's house, where witness found two hundred and ninety-three head of his sheep.   Nearly all of the said sheep had been

recently sheared. The flock contained some seventy head that had not been sheared. On the way from Dean's house to the shearing pen, witness and Dean met defendant, and asked defendant about the sheep, and he told them where they would be found. Witness and Dean found the sheep on the mountain designated by defendant, rounded them up and drove them to Kelley's camp. The sheep were counted at Kelley's camp. Before the counting, Dean said that witness could take the sheep, but after the counting he said that he could not permit witness to take them. The witness then recovered the sheep through the sheriff. The said sheep were worth about one dollar a head. The sheep were recovered by witness on or about September 10, 1886. No one had the consent of the witness to take the sheep.

Cross examined, the witness said that when he asked Dean about his sheep, Dean said that he had them. The defendant was not with the sheep when witness and Dean met him, but was in a little valley about a half a mile from where the sheep then were. He told at once where the sheep were, and as a reason for not going with witness and Dean to get them said that he was sick. All the conversation with the defendant was conducted by Mr. Dean. The witness was then asked if, in the conversation with Dean when Dean, after agreeing to surrender the sheep, refused to do so, he did not say that his reasons for refusing to surrender them was that he had purchased them. His question was objected to and the objection was sustained.

John Dulaney was the next witness for the State. He testified that June Dean, in September, 1886, lived in a house at the head of Bear creek in Uvalde county, Texas. His shearing camp was about three and a half miles from his house, off the road, and in a brushy hollow. The road leading from Uvalde to Dean's house, and from Johnson's tank and Roberts's ranch to Dean's house, was the same until it reached a point near the mouth of Bear creek, where it branched—the branch leading to Dean's house. The witness knew that Chilton got some sheep at the Dean shearing place sometime early in September, 1886. Witness was at that place a few days before and saw the shearing of some sheep. One Parsons, Ell Reed, Ike Cox, and a Mexican did the shearing. That shearing place was on Blanket creek. The witness did not know who owned the sheep he saw sheared at that place, but knew them to be the same sheep which Chilton afterwards claimed and took. Witness did not see June Dean nor the de-

fendant at the shearing camp while the said sheep were being sheared.

J. H. Van Pelt testified, for the State, that a person going from Uvalde to June Dean's house would travel up the Frio road to the Frio river, and until reaching the mouth of Bear creek, whence a branch road led to Dean's house. Witness saw the sheep and the shearing referred to by the witness Dulaney, and helped transport the wool from the shearing camp to the place of deposit. The sheep were sheared in an unfrequented and isolated hollow, about three miles from Dean's ranch. The pen at the shearing place was newly made, and was about three miles distant from any road.

The State closed.

J. C. Mitchell testified, for the defense, that he lived in the Sabinal canyon, between which and Bear creek in Uvalde county all the land owned by witness is situated, except two hundred acres projecting into Bandera county. Witness gave June Dean permission to range his sheep on the Blanket creek land which witness owned. Dean's camp was not on witness's land, but was near it, and Dean, in September, 1886, occupied witness's Bear and Blanket creek lands for sheep grazing purposes. The witness's loose sheep ranged on that land, which was a fine region for sheep grazing.

Ell Reed testified, for the defense, that he knew the defendant and June Dean. In September, 1886, Dean's camp was situated on Bear creek, about two hundred yards from the main road. His shearing pen was about two miles across country, or three or four miles by the road, from the said camp. Witness was in Dean's employ between the first and tenth days of September, 1886, and at that time was shearing sheep at the said pen. He was helped by one Parsons, Ike Cox and a Mexican. While witness, Parsons, Cox and the Mexican were shearing a flock of about two hundred sheep, a party of men came to the pen and said that the flock was one that had been stolen and that they had been looking for. Dulaney, Van Pelt, Ware, Taylor and Peebles were the men of said party. Witness and his party quit shearing, turned the unsheared sheep loose and started to June Dean's house. At the time of said shearing, defendant was cook for the party and herded the sheep and helped pack the wool. He gave no orders about the sheep or the shearing. On the way to Dean's house, the witness and his party met Dean, who turned them back to the pen. Witness passed that night

with defendant, and was with him until morning, and knew that
he then made no claim to the sheep, nor at any time did he at-
tempt to exercise any ownership over them.   Dean and defend-
ant were arrested on that day.

Ike Cox, for the defense, testified as did the witness Reed with
regard to the defendant's connection with the sheep at the time
of the shearing of the same.

The motion for new trial raised the question discussed in the
opinion.

*Austin Pollard,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

White, Presiding Judge.   On his direct examination the
State had proved by the prosecuting witness Chilton that, in
looking for his lost sheep, he went to the shearing camp of one
Dean, and there saw Dean and had a conversation with him
about the sheep, in which Dean stated that he had the sheep;
also that Dean, at one of the conversations had with him, gave
his consent for witness to take the sheep, and that subsequently
he refused to let him do so.   On cross examination by defend-
ant, the witness was asked if in the conversation in which Dean
declined to give up the sheep he, Dean, did not claim as a reason
for his action that he had purchased them.   This question and
the answer thereto were objected to, and the objection was sus-
tained upon the ground that the evidence sought to be elicited
was hearsay.

The evidence was admissible upon the principle that "when
part of a conversation is given in evidence by one party, the
whole on the same subject may be inquired into by the other."
(Code Crim. Proc., art. 571.)   Another well settled rule under
which the evidence was also legitimate and admissible is that,
"when an act is done to which it is necessary or important to
ascribe a character, motive or object, what was said by the
actor at the time from which the character, motive or cause may
be collected is part of the res gestæ—verbal acts—and may be
given in evidence, whether the actor be or be not a party to the
suit."   (1 Greenl. Ev., sec. 108, and note, and note on page 130;
Williams v. The State, 4 Texas Ct. App., 5; Sager v. The
State, 11 Texas Ct. App., 110; Pharr v. The State, 9 Texas Ct.
App., 129.)

In the sixth paragraph of the charge of the court, which is specially complained of, the jury were instructed: "If a person is found in possession of property recently stolen, and if the circumstances are such as call upon him for an explanation and he fails to give any explanation of such possession, then these facts would authorize his conviction if a presumption of guilt has arisen in the minds of the jury from such facts." It is not for the judge to say what amount or degree of evidence is sufficient to warrant a jury in convicting. To do so is to charge upon the weight of evidence, and is reversible error. (Rice v. The State, 3 Texas Ct. App., 451; Lunsford v. The State, 9 Texas Ct. App., 217; Stephens v. The State, 10 Texas Ct. App., 120; Stone v. The State, 22 Texas Ct. App., 186.)

In Ayres v. The State, 21 Texas Ct. App., 399, it was held that "possession of recently stolen property, if such possession be unexplained, is prima facie evidence of theft, such as will authorize the inference or presumption of guilt, but such inference or presumption is not a mere legal one, but is one of fact to be found by the jury. The trial court should in no instance charge the conclusiveness of such inference and presumption, but should submit them as facts to be found by the jury; for, at most, they are but circumstances from which guilt is inferred, and not positive proof establishing it."

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*